# ECF TRANSCRIPTION SHEET



**ANDREW J. PECK**
**UNITED STATES MAGISTRATE JUDGE**
**UNITED STATES DISTRICT COURT**
Southern District of New York
United States Courthouse
500 Pearl Street, Room 1370
New York, N.Y. 10007-1312

Fax No.:           (212) 805-7933
Telephone No.:  (212) 805-0036

**Dated**:  December 9, 2013                                                     **Total Number of Pages**: 17

**MEMO ENDORSED:**

11.    The Clerk of Court shall close this action.


Copies **by ECF** to:  All Counsel

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC# _____
DATE FILED: 12/9/13

Peck, A.

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| BRUCE PADILLA, | 12 Civ. 7697 (JPO)(ADP) |
|---|---|
| Plaintiff, | |
| -against- | |
| U.S. SECURITY ASSOCIATES INC., a Delaware corporation, | |
| Defendant. | |

NP [REVISED PROPOSED] or ORDER GRANTING PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND AWARDS OF SERVICE FEE TO CLASS REPRESENTATIVE, ATTORNEYS' FEES, AND LITIGATION COSTS AND FEES

By Order dated September 12, 2013 the Court granted Plaintiffs' motion for preliminary approval of a class action settlement and class action notice, established settlement and objection procedures and scheduled a class action Fairness Hearing. This matter now comes before the Court by Plaintiffs' unopposed Motion dated December 2, 2013 for final approval of their Revised Settlement Agreement, and awards of a service fee to the class representative; and attorneys' fees to Class Counsel as well as litigation costs and fees. Based upon the parties' compliance with the procedures set forth in the September 12 Order, the Fairness Hearing conducted on December 9, 2012 and no objection to the settlement having been received; and also based upon all the prior proceedings herein and the agreement of the parties, it is

**ORDERED, ADJUDGED AND DECREED:**

1. The Court grants final approval of the settlement memorialized in the Revised Joint Stipulation of Settlement and Release ("Settlement Agreement"), attached to this Order as Exhibit A.

2. The Court finds that this class action settlement is procedurally and substantively fair,

reasonable, and adequate. Fed.R.Civ.P. 23(e). To determine procedural fairness, courts evaluate the negotiating process leading to the settlement. *Wal-Mart Stores, Inc. v. Visa USA. Inc.*, 396 F.3d 96, 116 (2d Cir. 2005). Substantive fairness is evaluated according to the factors set forth in *City of Detroit v. Grinnell Corp.*, 495 F.2d 448 (2d Cir. 1974).

3. The Court finds that the Settlement Agreement is the result of extensive, arm's length negotiations by counsel well-versed in the prosecution and defense of wage and hour class and collective actions. The active involvement of the Magistrate Judge reinforces the conclusion that the Settlement Agreement is non-collusive.

4. The *Grinnell* factors weigh in favor of final approval. Those factors are; (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. 495 F.2d at 463.

Even at the advanced stage of this litigation, Plaintiffs are challenged by continued complexity, cost and delay. Settlement addresses these concerns on terms that favor the class. The class's reaction to the settlement has been favorable as demonstrated by the absence of objections and the significant percentage of class members who have made claims during the settlement process. The fact that this settlement occurred at a late stage in this litigation weighs in favor of satisfaction of *Grinnell* factors 3 through 6. The extensive discovery permits the parties to resolve the case responsibly. The settlement fund is substantial, even in light of the best possible recovery. The settlement achieves a significant recovery for the class especially

2

when measured against the attendant risk and delay. Plaintiffs will receive full compensation for all off-the-clock work including compensation for overtime pay. The potential "value added" from continued litigation does not appear to be great. The Settlement Agreement includes substantial prejudgment interest awards.

5. The Court approves a $10,000 award of a Service Fee Class Representative and named-Plaintiff Bruce Padilla. *Matheson v. T-Bone Rest., LLC,* 09 CIV. 4214 DAB, 2011 WL 6268216 (S.D.N.Y. Dec. 13, 2011).

6. The Court approves the application for an award of attorneys' fees in the amount of $175,000.00 to Class Counsel Kahn Opton LLP computed as 1/3 of the $525,000 settlement amount. In wage and hour class action lawsuits, public policy favors attorneys' fee awards based upon a percentage of the common fund, as opposed to a loadstar method. *Reyes v. Altamarea Grp., LLC,* No. 10 Civ. 6451, 2011 WL 4599822, at *7 (S.D.N.Y. Aug. 16, 2011). See, *McDaniel v. County of Schenectady,* 595 F.3d 411, 417 (2d Cir. 2010); *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.,* 396 F.3d 96, 122 (2d Cir. 2005). The fee award satisfies the six factor test enumerated in *Goldberger v. Integrated Res. Inc.,* 209 F.3d 43, 48-50 (2d Cir. 2000): (1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of litigation; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations. Class counsel calculates the fee lodestar as 160.6 hours at a $550 hourly rate, or $88,330. The lodestar method provides a rough "baseline" "cross check" of the reasonableness of percentage method fee awards; however, for cross check purposes, the "hours documented by counsel need not be exhaustively scrutinized by the district court." *Goldberger,* 209 F.3d at 50. The Court is satisfied that the lodestar multiplier is well within an acceptable range.

7. The Court approves an award of litigation costs and fees incurred in prosecuting this

3

lawsuit in the amount of $3,153.05. *In re Indep. Energy Holdings PLC Sec. Litig.*, 302 F. Supp. 2d 180, 183 n.3 (S.D.N.Y. 2003) (approving reasonable compensation for incurred, incidental and necessary out-of-pocket expenses that are customarily charged to clients).

8. The Court will enter Judgment in accordance with the Revised Settlement Agreement and dismiss the case with prejudice. The "Effective Date" shall be the date the Court enters such Order and Judgment.

9. The Court hereby permanently enjoins Class Members from pursuing and/or seeking to reopen claims that have been released by the Revised Settlement Agreement.

9. The Claims Administrator will disburse settlement checks to the Class Members, Class Counsel's attorneys' fees and expenses to Class Counsel and the Service Award to named-Plaintiff Bruce Padilla.

10. All other terms of the Settlement Agreement are incorporated in this Order. The parties shall abide by those terms.

AP 11. The Clerk of Court shall close this action.

SO ORDERED:

_____ 12/9/13
HON. ANDREW J. PECK, U.S.M.J.

ANDREW J. PECK
United States Magistrate Judge
Southern District of New York

Copies: All Counsel

4

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

BRUCE PADILLA,

        Plaintiff,

-against-

U.S. SECURITY ASSOCIATES, INC.,

        Defendant.

Index No. 12-Civ-7697 (JPO)(AJP)

REVISED JOINT STIPULATION OF SETTLEMENT AND RELEASE

      This Revised Joint Stipulation of Settlement and Release ("Settlement Agreement') is made by the Class Representative, the class of individuals he represents (collectively, "Plaintiffs"), and Defendant ("USSA").

      WHEREAS, Bruce Padilla ("Class Representative") commenced this action on October 15, 2012 by the filing of a Summons and Complaint;

      WHEREAS, the Complaint asserted claims under the Fair Labor Standards Act, 29 U.S.C. §§ 201 *et seq.* ("FLSA") and New York Labor Law §§ 650 *et seq.* ("NYLL"), and sought recovery of unpaid wages, including overtime, for time worked off-the-clock (the "OTC Claim"), plus liquidated damages, interest, and attorneys' fees and costs;

      WHEREAS, USSA denied the claims and does not concede liability, but agrees to settle this litigation to avoid the burden and uncertainty of continuing litigation;

      WHEREAS, the Parties agree that the settlement amount does not represent punitive or liquidated damages;

      WHEREAS, Class Counsel has prosecuted this case by, among other activities, preparing pleadings, negotiating and drafting class and collective action notices, deposing numerous witnesses, interviewing class members, making several court appearances and filing various status reports with the Court, including the settlement conference before Magistrate Judge Peck, reviewing and analyzing relevant documents, including payroll data, and evaluating the merits of this action and Settlement Agreement; and

      WHEREAS, Class Counsel concluded that this Settlement Agreement is fair, reasonable and adequate and in the best interests of the Plaintiffs based upon an evaluation of factors including the risk that continuing litigation might result in a recovery that is less favorable to Plaintiffs, and that any recovery would probably be delayed for at least one year.

NOW, THEREFORE, in consideration of the mutual promises set forth in this Settlement Agreement, the Parties agree to settle this action as follows:

1. DEFINITIONS.

　　1.1　"Claim Forms" mean the Claim Form (attached hereto as Exhibit A).

　　1.2　"Class Representative" refers to the named Plaintiff.

　　1.3　"Class Members" refers to all individuals in the class certified by the Court's Order dated February 20, 2013, but excluding the following individual who submitted a valid, timely class action exclusion request: Rochelle Nurse.

　　1.4　Counsel. "Class Counsel" refers to Kahn Opton LLP and Stephen H. Kahn. "Defendant's Counsel" refers to Littler Mendelson, P.C., Gregory Reilly and Emily Haan.

　　1.5　"Covered Period" is the period from October 15, 2006 through the date of this settlement.

　　1.6　"Effective Date" shall be the date the Court enters an Order Granting Final Approval approving this Settlement Agreement including its determination of awards of attorneys' fees and costs, and any service fee to Named Plaintiff.

　　1.7　"Defendant" or "USSA" refers to U.S. Security Associates, Inc.

　　1.8　"Fairness Hearing" shall mean the hearing on the Motion for Final Approval.

　　1.9　"Net Settlement Payment" refers to the remainder of the Settlement Payment after deduction for any court-approved awards of attorneys' fees and costs, settlement administration expenses, any applicable payroll taxes and deductions and any service fees to the Named Plaintiff. If the total claimed Settlement Awards would equal less than 50% of the Net Settlement Payment, the Claims Administrator shall proportionately increase the Settlement Award for each Qualified Claimant so that the amount actually distributed to Class Members shall equal 50% of the Net Settlement Payment. Any amount above 50% of the Net Settlement Payment that is not claimed shall remain the property of Defendant.

　　1.10　"Order Granting Approval of Reversion" refers to an Order entered by the Court approving Defendant's motion to return any unclaimed and/or uncashed monies in the Reversionary Fund.

　　1.11　"Order Granting Final Approval" refers to the final Order entered by the Court after the Fairness Hearing.

　　1.12　"Order Granting Preliminary Approval" refers to the Order entered by the Court preliminarily approving, *inter alia*, the terms of this Settlement Agreement, the manner and timing of providing notice to the Class Members, and the time period for Class Members to file objections.

-2-

1.13 "Qualified Claimant" refers to Class Members who timely submit a valid Claim Form (Exhibit A).

1.14 "Settlement Administrator" shall refer to Simpluris, Inc., the third-party entity appointed by mutual agreement of the parties.

1.15 "Settlement Award" refers to the gross amount payable to each Qualified Claimant from the Net Settlement Payment based on the schedules agreed to by the Parties less applicable taxes and deductions. However, if the total Settlement Awards actually claimed by Qualified Claimants equals less than 50% of the Net Settlement Payment, the Claims Administrator shall proportionately increase each Qualified Claimant's Settlement Award such that the sum of all Settlement Awards equals 50% of the Net Settlement Payment.

1.16 "Settlement Payment" means the $525,000.00 payment that USSA has agreed to pay to settle this action, including wages, interest, applicable taxes, attorneys' fees, costs, settlement administration expenses, and any service fee to the Named Plaintiff approved by the Court.

1.17 "Settlement Fund" refers to the fund administered by the Settlement Administrator containing the Net Settlement Payment.

1.18 "Reversionary Fund" means all monies remaining in the Settlement Fund after all payments required by this Agreement have been paid, which remain Defendant's property and shall be returned to Defendant by the Settlement Administrator upon the Court's issuance of an Order Granting Approval of Reversion.

1.19 The "Court" shall mean U.S. Magistrate Judge Andrew J. Peck.

2. APPROVAL AND CLASS NOTICE.

2.1 Plaintiff will file a Motion for Preliminary Approval of this Settlement Agreement including awards of attorneys' fees and costs, and any service fee for the Class Representative, a proposed Notice of Settlement of the Class Action suit and Fairness Hearing, and a proposed Order Preliminarily Approving the Settlement. Defendant will advise the Court that it supports said motion, so long as the motion comports with this Settlement Agreement. If the Court denies the Preliminary Approval Motion, then the litigation will resume unless the Parties agree to seek reconsideration or seek Court approval of a renegotiated settlement. If a mutually agreed settlement is not approved, the case will proceed as if no settlement had been attempted.

2.2 Appointment Of The Settlement Administrator.

(A) Within five (5) business days of the execution of this Settlement Agreement, the Parties shall engage Simpluris, Inc. as Settlement Administrator.

(B) The Settlement Administrator shall be responsible for:

(1)     preparing, printing and disseminating by one first class mailing to the Class Members the Notice of Class Action Settlement and Claim Forms within seven (7) days after the Court's preliminary approval of this Agreement;;

(2)     receiving and reviewing the Claim Forms submitted by the Class Members to determine eligibility for payment;

(3)     mailing one reminder notice to Class Members if no Claim Form was received within thirty (30) days of the initial mailing (the reminder notice shall include only resending the Notice and Claim Forms with an Addendum coversheet stating "Reminder Notice");

(4)     paying the Court-approved attorneys' fees and costs within seven (7) business days of the Effective Date;

(5)     Fourteen (14) days after the Court's Order Granting Final Approval of the settlement, paying the individualized Settlement Awards for Qualified Claimants in such amounts as shall be set forth in the schedules to be agreed upon jointly by Counsel within ten (10) days after the Court's Order Granting Preliminary Approval of the Settlement;

(6)     mailing the payments describe in paragraphs 2.2(B)(4)-(5), above;

(7)     ascertaining current address and addressee information for each Class Notice and applicable Claim Form returned as undeliverable by conducting one skip trace and re-mailing of the Class Notice and applicable Claim Form to any new address received as a result of a skip trace;

(8)     providing Defendant's counsel and Class Counsel with an updated address list for Class Members, reflecting any updated addresses discovered by the Settlement Administrator over the course of administering the Class Notice and Claim Forms;

(9)     performing all tax reporting duties required by federal, state or local law and making timely payment of USSA's share of payroll taxes from the Settlement Payment;

(10)    responding to inquiries of Class Members regarding the terms of settlement and procedures for filing objections or Claim Forms by maintaining a toll free number to respond to Class Members inquiries;

(11)    referring to Class Counsel and Defendant's counsel jointly all inquiries by Class Members regarding matters not within the Settlement Administrator's duties specified herein;

(12)    responding to inquiries of Class Counsel and Defendant's counsel regarding the administration of the settlement;

(13)    tracking Claim Form deficiencies, as described below;

(14) apprising counsel for the parties of the activities of the Settlement Administrator, including promptly providing copies to Defendant's Counsel of all electronic or written communications between the Settlement Administrator, Class Counsel, Plaintiffs, and/or the Class Members upon initial or first transmission by the Settlement Administrator, Class Counsel, Plaintiffs, and/or the Class Members;

(15) maintaining adequate records of its activities, including the dates of the mailing of Class Notices and mailing and receipt of Claim Forms, returned mail and other communications, and attempted written or electronic communications with Class Members;

(16) confirming in writing the substance of its activities and its completion of the administration of the settlement;

(17) returning all monies remaining in the Reversionary Fund to USSA upon the Court's issuance of an Order Granting Approval of Reversion;

(18) under no circumstances shall the Settlement Administrator alter the content or substantively alter the format of the Class Notice or the Claim Form;

(19) immediately notifying Class Counsel and Defendant's counsel of the names of all Class Members who have not submitted valid Claim Forms within 30 days of the Settlement Administrator's mailing of such forms; and

(20) such other tasks as the Parties mutually agree.

(C) The Parties will provide the Settlement Administrator with a copy of this Settlement Agreement.

(D) Defendant will provide the Settlement Administrator with records reasonably necessary for the Settlement Administrator to perform its duties. All disputes relating to the Settlement Administrator's ability and need to perform its duties shall be referred to the Court, if necessary, which will have continuing jurisdiction over the terms and conditions of this Settlement Agreement, until all payments and obligations contemplated by the Settlement Agreement have been fully carried out.

3. NOTICE AND CLAIMS PROCESS.

3.1 Within ten (10) days of the Parties' engagement of the Settlement Administrator, USSA shall provide to Class Counsel and to the Settlement Administrator a list containing the name, last known address and social security number for each Class Member.

3.2 The Settlement Administrator shall mail the Notice of Class Action Settlement, and Claim Forms, within fifteen (15) days after the Court's preliminary approval, to all Class Members via first class mail. If such mailed notices are returned as undeliverable, the Settlement Administrator shall immediately (i) conduct one skip trace to determine a current mailing address and shall promptly re mail the Notice of Class Action Settlement, and applicable Claim Forms to any new addresses disclosed through such efforts, and (ii) notify Class Counsel of its activity. USSA shall cooperate with the Settlement Administrator in ascertaining the best

address for each Class Member. If no Claim Form is received within thirty (30) days of the initial mailing, the Settlement Administrator will mail out a Reminder Notice as set forth in Paragraph 2.2(B)(3), above.

3.3 No later than fourteen (14) calendar days before the Fairness Hearing, the Settlement Administrator shall file with the Court a declaration verifying that the Notice of Class Action Settlement and Claim Forms were disseminated in accordance with the Order of Preliminary Approval.

3.4 Each Class Member (regardless of whether he/she submits a Claim Form) will be bound by this settlement, as approved by the Court, unless said Class Member, within thirty (30) days of the mailing of the Notice of Class Action Settlement, objects to the settlement.

3.5 In order to receive a Settlement Award, each Class Member must return, postmarked within sixty (60) days of mailing of the initial notice Claim Form (Exhibit A), a properly executed Claim Form thereby making that individual a Qualified Claimant.

3.6 In the event that the Settlement Administrator concludes that a claim is untimely or invalid pursuant to the express terms of this Agreement, then the Settlement Administrator will send written notice to the claimant and Class Counsel of the claim's deficiency. This notice shall state that the claimant may contest the denial by submitting any written materials that support the timeliness of the claim within ten (10) days.

3.7 Claim Forms that are postmarked after the 60 day deadline set forth in Section 3.5 are to be deemed untimely and invalid. Counsel for the Parties shall review all claims contested as untimely and attempt to reach a resolution. If Counsel cannot reach a resolution, the parties will request that the Court decide their validity within seven (7) days of receiving notice of the contested claims. The Court's decision will be final and binding. After this decision, and assuming the Court has entered an Order of Final Approval, the Settlement Administrator shall promptly pay any claims ruled valid.

4. SETTLEMENT PAYMENT AND CALCULATION OF CLAIMS.

4.1 In consideration for the mutual covenants and promises set forth herein, the Parties agree, subject to the Court's approval, as follows:

> Within fifteen (15) days after the Effective Date, Defendant agrees to pay Five Hundred Twenty Five Thousand ($525,000.00) Dollars (the "Settlement Payment"), to the Settlement Administrator to resolve the claims of all Qualified Claimants, including attorneys' fees, costs, applicable taxes, class action administration expenses, and any service fees to the Named Plaintiff approved by the Court. Settlement Awards will be made out of the Settlement Fund on a claims-made basis. USSA shall not be required to pay any amounts above the Settlement Payment under this Agreement. Regardless of participation rate, USSA agrees to pay a minimum of 50% of the Net Settlement Payment to Qualified Claimants. The Settlement Payment shall be allocated as follows:

    (A) <u>Allocation between wages and interest</u>. Eighty percent (80%) of the Net Settlement Payment shall be allocated to resolution of all OTC Claims and shall be paid to Qualified Claimants. Twenty percent (20%) of the Net Settlement Payment shall be allocated to payment of pre-judgment interest. Payment shall be allocated in accordance with the schedule agreed to by the Parties, which shall reasonably reflect each individual Class Member's proportional share of all recognized OTC claims and pre-judgment interest. If Counsel are unable to agree on such a schedule, then the parties agree that such matter shall be determined by the Court in accordance with such procedures as the Court deems appropriate. The parties agree that such determination shall be final and binding and waive their right to object or appeal said determination.

  4.2 <u>Payment Terms</u>. The Settlement Administrator will distribute the Settlement Payment as follows:

    (A) <u>Attorneys' Fees and Costs</u>. The Parties agree and Class Counsel accepts to be paid, as attorneys' fees, a total amount of $175,000 and $3,153.05 in disbursements ("Attorneys' Fees and Costs"). The Settlement Administrator will pay the total amount of Attorneys' Fees and Costs of $175,000 plus $3,153.05 to Class Counsel within ten (10) days of the Effective Date.

    (B) <u>Service Fees</u>. If the Court approves payment of a service fee to the Class Representative, then the Named Plaintiff Bruce Padilla will be paid $10,000 for his services as a Class Representative ("Service Fee"). The Settlement Administrator will pay the Service Fee to the Named Plaintiff along with his Individualized Settlement Award within ten (10) days of the Effective Date. If the Service Fee is not approved by the Court, that money will be allocated to Class Members and shall become part of the Net Settlement Payment.

    (C) <u>Settlement Awards</u>. The Parties agree that the Settlement Administrator will pay Qualified Claimants a Settlement Award based on the schedules agreed to by the Parties for the OTC Claims and Interest within thirty (30) days after the Effective Date. If the total Settlement Awards actually claimed by Qualified Claimants equal less than 50% of the Net Settlement Payment, the Claims Administrator shall proportionately increase each Qualified Claimant's Settlement Award such that the sum of all Settlement Awards equals 50% of the Net Settlement Payment. The Parties agree that all costs of notice and claims administration will be paid from the Settlement Payment.

    (D) Tax Treatment; Form of Payment.

      (1) <u>Wages</u>. The Settlement Administrator will withhold or cause to be withheld from all wages paid to Qualified Claimants all applicable W-2 payroll taxes, and will pay or cause to be paid the employer's share of such taxes relating to its payment of wages. Wage damages shall be reported on IRS Form W-2. The Parties agree that all applicable payroll taxes will be deducted from the Settlement Payment.

      (2) <u>Non-wage Damages</u>. The non-wage damages, i.e., prejudgment interest, and any Court-approved Service Fees, shall be reported on IRS Form 1099-MISC.

-7-

(3)     <u>Attorneys' Fees</u>.  Attorneys' fees paid to Class Counsel shall be reported on IRS Form 1099-MISC.

(4)     Plaintiffs acknowledge that they have not received or relied upon any advice from Class Counsel, Defendant's Counsel or USSA as to the taxability of the payments received pursuant to this Agreement.  Each individual Class Member will be solely responsible for all taxes, interest and penalties due with respect to any payment received pursuant to this Agreement other than employer payroll taxes.

(E)     Any monies remaining in the Settlement Fund following all payments set forth above ("Reversionary Fund") remains Defendant's property if any such monies were advanced to the Settlement Administrator.  The Reversionary Fund shall be returned to USSA upon the Court's Order Granting Approval of Reversion, as set forth in this Paragraph, below.

(F)     <u>Unclaimed Funds, Uncashed Checks and Reversion to USSA</u>.

(1)     If Class Members fail to submit any Claim Forms postmarked within sixty (60) days of the initial Notice of Class Action Settlement as set forth in Paragraph 3 above, those funds will remain Defendant's property and will be subject to reversion to USSA upon Court approval.  The Settlement Administrator will inform Class Counsel of the names these Class Members as set forth in Paragraph 2.2, above.

(2)     If payments to Class Members are not cashed within sixty (60) days of the check date, Simpluris will send a reminder notice to cash the check within thirty (30) days.  If checks are not cashed within thirty (30) days of the date of the reminder notice, the checks will be void and the money will remain Defendant's property, subject to reversion to USSA upon Court approval as set forth below.  The Settlement Administrator will notify the parties of any uncashed checks in writing.

(3)     Defendant will submit a motion seeking the Court's approval for returning the Reversionary Fund to USSA after conferring with Plaintiffs to resolve any objections.  If the parties are unable to resolve any objections, Class Counsel will submit a motion to the Court setting forth the names of the Class Member(s) at issue, the amounts of the Settlement Award(s) that Plaintiffs object to, and the basis for each objection.

(4)     The monies in the Reversionary Fund shall be returned to USSA by the Settlement Administrator within fourteen (14) days of the Court's issuance of an Order Granting Approval of Reversion.

4.3     <u>Objections to Settlement</u>.

(A)     Class Members who wish to object to the proposed settlement at the Fairness Hearing must first do so in writing mailed to the Clerk of the Court via First Class U.S. mail and be postmarked by a date certain, to be specified on the Notice of Proposed Class Action Lawsuit and Fairness Hearing, which date shall be thirty (30) days after the Settlement Administrator mails such Notice to such Class Member.

(B) Any Class Member who files a timely objection may appear at the Fairness Hearing in person or through legal counsel. An objector who wishes to appear at the Fairness Hearing must state his or her intention to do so at the time he/she submits the written objections. An objector may withdraw his/her objections at any time.

(C) The Parties may file with the Court written responses to any filed objections prior to the Fairness Hearing.

4.4  Motion for Order Granting Final Approval. Not later than five (5) calendar days before the Fairness Hearing, Plaintiffs may submit an additional Motion for Order Granting Final Approval. Defendant will advise the Court that it supports said motion, so long as the motion comports with this Settlement Agreement. The Fairness Hearing shall be held at the Court's convenience.

4.5  Entry of Order Granting Final Approval. At the Fairness Hearing, the Parties will request that the Court, among other things, (a) enter an Order Granting Final Approval in accordance with this Settlement Agreement, (b) approve the Settlement Agreement as final, fair, reasonable, adequate, and binding on all Class Representatives and Class Members, (c) dismiss the Litigation with prejudice, and (d) enter an order permanently enjoining Class Members from pursuing and/or seeking to reopen claims that have been released by this Settlement Agreement.

4.6  Effect of Failure to Grant Final Approval. If the Court fails to grant final approval of this Settlement Agreement, then the Parties shall proceed as follows: The litigation will resume unless the Parties jointly agree to: (l) seek reconsideration or appellate review, or (2) attempt to renegotiate the settlement and seek Court approval of the renegotiated settlement. If any reconsideration and/or appellate review is denied, or a mutually agreed-upon settlement is not approved, the litigation will proceed as if no settlement had been attempted. Additionally, notice will be provided to Class Members, in such manner as the Court determines, that the Settlement Agreement did not receive final approval and that, as a result, no payments will be made to Class Members.

4.7  Release of Claims.

(A)  Full Release by Named Plaintiff, Bruce Padilla. By operation of the entry of the Order Granting Final Approval, Bruce Padilla fully releases and discharges Defendant and from any and all claims that the Named Plaintiff now has or claims to have, or which Bruce Padilla at any time heretofore had or claimed to have, or which Bruce Padilla at any time hereafter may have or claim to have, arising out of or related to any act, omission, event, fact or other thing that existed or occurred on or before the entry of the Order Granting Final Approval. Without limiting the generality of the foregoing, and in addition to the foregoing, Bruce Padilla specifically and expressly releases to the maximum extent permitted by law any claims against USSA occurring prior to the entry of the Order Granting Final Approval arising out of or related to violations of any federal or state employment discrimination laws, including Title VII of the Civil Rights Act of 1964; the federal Family and Medical Leave Act; the Americans With Disabilities Act; the National Labor Relations Act; the Equal Pay Act; the Employee Retirement Income Security Act of 1974; as well as claims arising out of or related to violations of the provisions of the New York Labor Law; state and federal wage and hour laws; breach of

contract; fraud; misrepresentation; common law claims; unfair competition; unfair business practices; negligence; defamation; infliction of emotional distress; invasion of privacy; assault; battery; false imprisonment; wrongful termination; and any other state or federal law, rule, or regulation.

(B) Release of Claims by Class Members. By operation of the entry of the Order Granting Final Approval, and except as to such rights or claims as may be created by this Settlement Agreement, the Class Representatives and every Class Member shall be deemed to have forever and fully released all New York state wage and hour claims that were asserted or that could have been asserted in this lawsuit and that arose in the course of the Class Representative's or Class Members' employment with USSA during the Covered Period. All Class Members who have opted in to the FLSA collective shall be deemed to have forever and fully released all federal wage and hour claims that were asserted or that could have been asserted in this lawsuit and that arose in the course of the Class Representative's or Class Members' employment with USSA during the Covered Period. Class Members who have opted-out of this lawsuit have not by operation of the entry of the Order Granting Final Approval, released their federal or New York state wage and hour claims, if any.

Furthermore, Class Members give up their right to individual damages in connection with any administrative, arbitration or court proceeding with respect to their employment with and/or termination of employment with Defendants, including claims raised by the Attorney General in its investigation of USSA payroll practices, and if Class Members are awarded money damages, they shall assign to Defendant their right and interest to such money damages. Should any agency or other third-party seek to assert on their behalf any of the claims released by this Agreement, Class Members shall designate Defendants as the recipient of, or otherwise pay over to Defendant, any recovery (whether by way of judgment or settlement) obtained as to such claims.

4.8 No Retaliation. USSA will not retaliate against Plaintiffs for their participation in the Litigation and/or this Settlement. Neither USSA nor its agents or representatives shall attempt to persuade any Class Member to refuse, or not accept, any payment made pursuant to this Agreement.

4.9 Release of Fees and Costs for Settled Matters. Class Counsel and Plaintiffs release any claim that they may have against USSA for attorneys' fees or costs associated with Class Counsel's representation of Plaintiffs except as awarded pursuant to this Settlement Agreement. Any fee payments approved by the Court will be the final and complete payment of all attorneys' fees and costs associated with Class Counsel's representation in this litigation.

4.10 No Assignment. Class Counsel and Class Representatives, on behalf of the Class and each individual Class Member, represent and warrant that they have not and will not assign or transfer, or purported to assign or transfer, to any person or entity, any claim or any portion thereof or interest therein, including, but not limited to, any interest in the Litigation, or any related action.

4.11 Non Admission of Liability. By entering into this Settlement Agreement, USSA in no way admits any violation of law or liability whatsoever to Plaintiffs, all such liability being

expressly denied. This Settlement Agreement and all acts performed or documents executed pursuant to this Agreement: (a) shall not be used as an admission or evidence of any wrongdoing or liability on the part of USSA or of the truth of any of the factual allegations; (b) may not be used as an admission or evidence of fault or omission on the part of USSA in any civil, criminal, administrative or arbitral proceeding; and (c) may not be used as an admission or evidence of the appropriateness of these or similar claims for class certification or administration or collective action treatment other than for purposes of administering this Settlement Agreement. This Settlement Agreement shall be inadmissible in evidence in any proceeding, except an action or proceeding to approve, interpret, or enforce the terms of the Settlement Agreement.

5.  MISCELLANEOUS.

    5.1  <u>Cooperation Between the Parties; Further Acts</u>. The Parties shall cooperate and use their best efforts to obtain the Court's preliminary and final approval of this Settlement Agreement. Each of the Parties, upon the request of any other party, agrees to perform such further acts and to execute and deliver such other documents as are reasonably necessary to carry out the provisions of this Agreement. Class Counsel shall bear the burden of initially preparing all motions and moving papers and documents necessary to obtain preliminary and final approval of this Settlement Agreement.

    5.2  <u>Entire Agreement</u>. This Settlement Agreement constitutes the entire agreement between the Parties. The Parties have not relied on any promises or discussions extrinsic to this Settlement Agreement.

    5.3  <u>Binding Effect</u>. This Settlement Agreement shall be binding upon the Parties and, with respect to Class Representatives, Class Members, their spouses, children, representatives, heirs, administrators, executors, beneficiaries, conservators, attorneys and assigns the Parties have negotiated all the terms and conditions of this Settlement Agreement at arm's length. All terms and conditions of this Settlement Agreement in the exact form set forth in this Settlement Agreement are material to this Settlement Agreement and have been relied upon by the Parties in entering into this Settlement Agreement.

    5.4  <u>Construction; Choice of Law</u>. The captions of this Settlement Agreement shall have no effect upon the interpretation of this Settlement Agreement. Each party participated in the drafting this Settlement Agreement, so it shall not be construed against any party by virtue of draftsmanship. This Settlement Agreement shall be interpreted and governed under the laws of the State of New York, without regard to choice of law principles, except to the extent that the law of the United States governs any matter set forth herein, in which case such federal law shall govern.

    5.5  <u>Blue Penciling</u>. Following the Effective Date, if any provision of this Settlement Agreement is held by a court of competent jurisdiction to be unlawful or unenforceable, the remaining portions of this Settlement Agreement will remain in full force and effect, unless such determination eliminates the essence of the benefit to any party in entering into this Settlement Agreement.

5.6     Continuing Jurisdiction.     The Court shall retain jurisdiction over the interpretation, enforcement and implementation of this Settlement Agreement.

5.7     Extension of Time.     The Parties may agree upon a reasonable extension of time for deadlines and dates reflected in this Settlement Agreement, without further notice to the Court, subject to Court approval as to Court dates.

5.8     Waivers, Amendments, Etc. To Be in Writing.     No waiver or amendment of the terms of this Settlement Agreement shall be valid unless in writing, signed by or on behalf of the Parties and then only to the extent set forth in such writing, subject to any required Court approval. Any failure by any party to insist upon the strict performance by the other party of any of the provisions of this Settlement Agreement shall not be deemed a waiver of future performance of the same provisions or of any of the other provisions of this Settlement Agreement.

5.9     Counterparts.     The Parties (and Class Representatives on behalf of Plaintiffs) may execute this Settlement Agreement in counterparts, and execution in counterparts shall have the same force and effect as if Class Representatives and Defendant have signed the same instrument. Any signature made and transmitted by facsimile or email for the purpose of executing this Settlement Agreement shall be deemed an original signature for purposes of this Settlement Agreement and shall be binding.

DATED: September 16, 2013

_____
BRUCE PADILLA
Individually and as Class Representative

U.S. SECURITY ASSOCIATES, INC.
BY: _____

as _____

REVIEWED AND APPROVED:

KAHN OPTON
_____
Stephen H. Kahn
As Class Counsel

REVIEWED AND APPROVED:

LITTLER MENDELSON, P.C.
_____
Gregory Reilly
As Attorney for Defendant

-12-